## Case No. 11,065.

### The PHEBE.

[1 Ware (354) 360.] [1]

District Court, D. Maine.　Feb. 7, 1837.

MOTION FOR A RULE ON THE MARSHAL TO PAY THE PROCEEDS INTO THE REGISTRY.

1. When property has been ordered to be sold by the admiralty on process in rem, the gross proceeds of the sale, deducting only the expenses of the sale, are paid into the registry.

2. All claims, liens, or charges on the property must be presented to the court for allowance, and are not paid but by order of the court.

3. The liens which the officers of the court have for their fees and expenses do not in this respect differ from other liens or privileged debts.

4. A wharfinger has a lien on a vessel for wharfage. But when a vessel is under arrest on legal process and in the custody of the law, he cannot enforce his lien by a detention of the vessel. He must apply to the court for its allowance, and it will be ordered to be paid in concurrence with other liens standing in the same rank of privilege.

[Cited in The Kate Tremaine, Case No. 7,622; Gilbert Hubbard & Co. v. Roach, 2 Fed. 394; The Young America, 30 Fed. 790.]

[Cited in City of Jeffersonville v. The John Shallcross, 35 Ind. 23.]

At a former term of the court, a decree was obtained by McLellan against the Phebe, for the non-performance of a contract of the master by a bill of lading, for the transportation of certain merchandise described in the libel from Eastport to Boston. [Case No. 11,064.] A venditioni exponas was issued, on which the vessel was sold, and the return of the marshal states that the brig was sold to "Robert Perkins, of Castine, he being the highest bidder therefor, for $370, upon a credit of nine months, and I have taken notes signed by said Perkins and C. J. Abbot for said sum." It is admitted that the brig was sold on a credit with the assent of the agent of the libellant, who was present; and one of the notes given, for $56.75, was delivered to and accepted by the attorney of the libellant in part payment. The term of credit on which the sale was made having expired, C. S. Daveis, proctor for the libellant, moved for a rule on the marshal to pay into court the residue of the money for which the brig sold.

The marshal, in his answer to the motion, states:

That the Phebe was seized by virtue of a warrant of arrest issued on the libel, by Isaac Allard, a deputy, by whom Charles J. Abbot was appointed keeper of the brig, with the following written orders: "This certifies that I have this day appointed Charles J. Abbot, of Castine, keeper of the brig Phebe, owned by Robert Perkins of said Castine; and I authorize the said Abbot to detain said brig and safely to keep her in said port, at some safe and convenient wharf, and to

keep suitable fenders and apparatus attached to her to keep the same from injury, and all such services to be at my expense. (Signed) Isaac Allard, Dep. Marsh."

That immediately after the sale, the following bill was presented by Mr. Abbot, the keeper, and payment demanded.

That, considering the bill exorbitant, he declined paying it, and that after some discussion, it was agreed to refer the bill to Thomas Adams, a merchant of that place, who awarded the sum of $181.75, in full for the several charges of the bill, which was paid by deducting it from the sum due for the brig, and he took Abbot's receipt for it. That the costs due to the clerk have been paid to him, and the balance, being $56.75, he has paid to P. H. Greenleaf, counsel for the libellant; that Wm. McLellan, the father of the libellant, was present at the sale at the libellant's request, and was present when the bill was settled; that the wharf and the store, where the vessel lay and the rigging was stored, belonged to Perkins, the owner of the brig, and that Abbot was understood to be his attorney.

C. S. Daveis, for the motion.

Mr. Longfellow, contra.

WARE, District Judge. There is one irregularity in the proceedings of the marshal, which, though not made subject of complaint, nor remark at the argument, it may be proper to notice. The brig, in this case, was sold on a credit. The precept under which he sells, precludes the idea of credit, for it directs him to pay the proceeds into the court within ten days after the sale. In the present instance, as the agent of the libellant, and the claimant and owner were both present at the sale, and assented to the credit, the claimant, in fact, being the purchaser, it does not now lie with them to make the objection, though it necessarily prevented the marshal from complying strictly with the terms of the precept. The term of credit having expired, the counsel for the libellant now moves for a rule on the marshal to pay the money into the registry. The marshal, in his answer, states that part of the proceeds had been paid to the proctor of the libellant; that the fees due to the clerk had been heretofore paid into the registry; that $181.75 he paid at the time of the sale to Charles S. Abbot, the keeper, for wharfage, storage, &c., by deducting that sum from the amount of sales. It is not understood that the libellant requires the payment into the registry of the part which has been paid

[1] [Reported by Hon. Ashur Ware, District Judge.]

to his proctor, and the amount due to the clerk for fees has been already paid over. The motion I understand as calling for the residue, that is, the sum paid to Abbot, and what the marshal has retained as his own proper fees. It is not apparent what interest the libellant has in having paid into the registry the proper legal fees of the marshal, but as a question of practice it may be proper to consider it. There is no more doubt of the marshal's right to charge the expenses of custody on the proceeds of the sale, than there is of his right to his legal fees for the service of the precept. He is personally responsible for the safe-keeping of the property from the time of seizure to the sale. If he holds the possession by a keeper, as he ordinarily must do, he has an unquestionable right to have this expense charged on the property. The question now raised is, whether he is authorized to adjust and pay such charges, and deduct them from the proceeds, before they are paid into the registry; or whether the whole proceeds of the sale are first to be paid in, and these, as well as other charges, are to be submitted to the court, and not paid until they are allowed and ordered to be paid by the court. The terms of the precept seem to furnish a conclusive answer to this question. They are, that, "the moneys arising from said sale, after deducting the proper charges attending the same, you will pay into the registry of our said district court, within ten days thereafter." That is, the gross proceeds are to be paid into the registry, deducting only the proper charges of the sale itself.

The ninetieth section of the act of March 3d, 1799 [1 Stat. 697] commonly called the "Collection Act," has been referred to as authorizing the marshal to adjust and pay such charges, before paying the money into court. That act, after directing the manner of the sale, provides that "the amount of such sales, after deducting all proper charges, shall be paid, within ten days after the sale, by the person selling the same, to the clerk, &c., to be by him, after deducting the charges which shall be allowed by the court, paid to the collector," &c. In the first place, it may be remarked that the provisions of this section in its terms relate solely to the sales of merchandise and vessels condemned by virtue of that act. It is confined, therefore, by its terms, to cases of revenue seizures in which the United States are prosecutors, and does not profess to regulate the general practice of the court, proceeding as an instance court in private libels. And in the second place, a just interpretation of the act will not, as it appears to me, authorize the marshal to settle and pay such charges in cases falling strictly within the terms of the act. The law says that the marshal shall pay the amount to the clerk, "deducting all proper charges." But the charges he is authorized to deduct do not include all the expenses which are a charge on the property; for the clerk, in the

same section of the act, is directed to pay the amount to the collector, deducting charges allowed by the court. The proper charges mentioned by the statute, to be paid by the marshal, are the expenses incident to the sale, not such as are proper to be included in the bill of costs taxed by the court. That this is the construction which the law has uniformly received, is evident from the words of the precept, which has been framed upon it. If, therefore, the provisions of this section of the act are construed as governing the practice of the court in cases which do not arise under that law, they will not extract this case from its difficulties. But the statute, on the construction which has been put upon it, is only in affirmance of the common practice of the admiralty. In a proceeding in rem, the vessel is always taken into the custody of the law; and when it has been decreed subject to the libellant's claim, and ordered to be sold to satisfy it, the whole proceeds of the sale, deducting at most nothing more than the expenses of the sale, are paid into the court, and, like the thing itself before the sale, remain in the custody of the law. All persons having claims against them, of whatever kind they may be, must make them in court, and the money is never paid out but to one who shows a legal right to it. The propriety of this practice is obvious, if it be considered only in reference to the expenses of the prosecution. These expenses form a lien, or are a privileged debt against the property. 1 Valin, Comm. p. 362; Cleirac, Jurisdiction de la Marine, art. 5, note 15. And all the expenses of justice naturally stand in the same rank of privilege. All persons having claims of this kind have a right to look to the proceeds of the sale for their pay, and all are entitled to be paid concurrently. Now the case may happen in a protracted and expensive course of litigation, or by the accidental destruction of a large part of the property arrested, that the whole proceeds of the sale may not be enough to pay the expenses of the suit. In such a case it would be inequitable for one to receive his pay in full, and for another to be turned over to a personal demand against the parties to the suit. Equity requires in such a case, and so is the law of the court, if the balance of the expenses is not obtained from the parties to the suit, who are liable for them, that the proceeds of the sale should be divided among the several claimants, pro rata.

But there may be a variety of claims against the thing sold, standing in different degrees of privilege. Suppose as in the present case it be a vessel. There may be seamen's wages, bottomry bonds, and claims of material-men for supplies, all being privileged debts, and all the creditors having a right to look to the ship for their pay, and after she is sold, having the same right to look to the proceeds in the registry. It is the familiar and daily practice of the admiralty to entertain petitions against the proceeds in

the registry, in favor of creditors having a privilege against the vessel. The proceeds of the sale are as much pledged to them as the vessel herself. The court having possession of the pledge, which it has from the time it is arrested under its process, it necessarily becomes a duty to preserve it for all who have an interest in it, or claims upon it. If it allowed claims to be interposed and paid before the legal right of the claimant was established, it would be nothing else than allowing a man's property to be taken from him without his consent, and without judgment of law. When the property is sold, therefore, the whole proceeds of the sale are brought into court, and every person claiming a right to them, whether by way of lien or otherwise, must make his claim there. All having liens on the property, or a right in the proceeds, may intervene for their own interest, and make themselves parties to the cause, as well after as before the sale; and when parties, they are so not only for the purpose of enforcing their own rights, but of contesting the claims of others interfering with their own. The officer who executes the precept for the sale, has no more authority to settle and pay one claim than another; he has no more authority to allow and pay any of the expenses which have accrued in the prosecution, than he has any other privileged debt. The liens created by law in favor of these debts, do not differ from any other liens, except in the rank of their privilege. These, like all others, can only be allowed and established by virtue of a judgment of the court.

But it is argued that the principal items from which a deduction was made, and to which the main objection is made, that is, the wharfage, storage, &c., are privileged debts, constituting a lien on the property, and that the owner of the wharf and store had a right to detain the vessel until they were paid. It was under this idea that the marshal paid the demand, by deducting the sum from the amount of the sale. I admit the law that the owner of a wharf has generally a lien on a vessel for the wharfage, but I do not admit that he has, in a case of this kind, such a lien as authorizes him to detain the vessel for his pay. The right of detention is founded on possession, and necessarily supposes that the person having such right has the possession, or at least, the quasi possession of the thing. 1 Story, Eq. Jur. p. 483, note 506. But in this case, after the vessel was arrested on process from the court, she was in the custody of the law, and subject to the order of the court, and continued to be so until she was sold. It cannot be admitted that the wharfinger, by permitting her to lie at his wharf, withdrew her from the custody of the law or the possession of the court. His lien for wharfage, admitting it to exist, was not one which could be enforced by a detention of the vessel, but only by an application to the court, and that not in exclusion, but in

concurrence with other liens standing in the same degree of privilege. Nor is there any hardship in qualifying his lien in this way. She was under arrest on legal process, and he must be presumed to know, for no one can plead ignorance of the law, that his claim for wharfage, like all other claims against the vessel, must be presented to the court for allowance before it could be paid.

It is further said that the charge in this case is reasonable and moderate, and that if the money were paid into the registry, the court would immediately order it to be paid out again on the same charge. The answer is, that the court had no opportunity of informing itself whether it be reasonable and moderate or not; and it will not be questioned, it being a charge on the property which accrued in the prosecution of the suit and while it was in the custody of the law, that it is peculiarly the duty of the court to be satisfied that it is reasonable and proper to be paid, before the claim is allowed. In the mean time, the libellant demands that the money be paid into the registry according to the direction of the precept, and it cannot have escaped the counsel on the other side that he intends to contest this very item, and demand the judgment of the court whether the charge, under all the circumstances, is reasonable and proper to be allowed. My opinion is, that a rule must pass for the marshal to pay the money into court.

It appears from the marshal's answer that, in point of fact, the money has never been paid by the purchaser. It was deducted from the amount of the sale, and though nominally it was for the keeper, yet by far the largest part is for the benefit of the purchaser, who was also the owner. The vessel lay at his wharf, and the rigging was kept in his store. See The Collector, 6 Wheat. [19 U. S.] 194.

[NOTE. A motion was next made by the counsel for the actor for a monition to Perkins, the purchaser, to show cause why he should not pay to the marshal the balance of the purchase money which remained unpaid The motion was granted. Case No. 11,066.]